UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MONICA ABITIA,

            Plaintiff,

    v.

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

            Defendant.

No. 1:21-cv-00334-ADA-GSA

**FINDINGS AND RECOMMENDATIONS TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Doc. 20)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS**

## I.    Introduction

Plaintiff Monica Abitia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs.[1]  Docs. 20–22.  After reviewing the record the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant against Plaintiff, affirming the final decision of the Commissioner of Social Security.

## II.    Factual and Procedural Background[2]

On September 17, 2015 Plaintiff applied for supplemental security income.  The Commissioner denied the application initially on February 2, 2016 and on reconsideration on June 2, 2016.  AR 124, 133.  A hearing was held before an Administrative Law Judge (the "ALJ") on September 7, 2018.  AR 46.  On December 11, 2018 the ALJ issued an unfavorable decision.  AR

---

[1] The parties did not consent to jurisdiction the Magistrate Judge.  *See* Docs 8, 11.  Accordingly, the matter was then assigned to District Judge Dale Drozd and reassigned again to District Judge Ana de Alba upon her appointment.  Doc. 9, 23.

[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

17–45.  The Appeals Council denied review on January 31, 2020.  AR 6–11.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-

2

(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of September 17, 2015.  AR 22.  At step two the ALJ found that Plaintiff had the following severe impairments: learning disorder not otherwise specified; depression; anxiety; intellectual disability; history of renal stones; bilateral carpal tunnel syndrome; phase of life adjustment as a young adult; academic delay; developmental language disorder; post-traumatic stress disorder (PTSD); temporomandibular joint dysfunction (TMJD); arrhythmia; gastritis; and, bilateral hand eczema.  AR 22.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following additional restrictions:

> . . . frequently climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds. She could frequently balance, stoop, kneel, crouch, or crawl. She could frequently handle, finger, and feel with the bilateral upper extremities. She must avoid concentrated exposure to temperature extremes, wetness/humidity, vibration, and

hazards. She can have no more than occasional face-to-face interaction with the general public, supervisors, and coworkers. The claimant cannot understand, remember, and/or apply information necessary to perform complex and detailed work tasks or make judgments on complex and detailed work-related job assignments or cope with the stress normally associated with semi-skilled or skilled employment.

AR 25–38.

At step four the ALJ concluded that Plaintiff had no past relevant work.  AR 38.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy: garment bagger; bottle line attendant; garment sorter.  AR 39.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her application date of September 17, 2015.  AR 39.

## V.     Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred by rejecting Dr. Rios' opinion without setting forth specific legitimate reasons; 2) that the ALJ "failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for discounting Plaintiff's limitations related to colitis, including her persistent abdominal pain."  Br. at 1, Doc. 20.

### A.     Dr. Rios' Opinion

#### 1.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and

4

resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute

substantial evidence when it is "consistent with independent clinical findings or other evidence in

the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

## 2.    Analysis

On January 12, 2016, Dr. Rios performed a consultative internal medicine evaluation.  The

relevant portions of the examination and opinion are as follows:

> General Findings: *There was slight wasting of the left thenar pads*. Grip strength
> remained adequate at 5/5 and fine and gross finger movements remains preserved.
> The claimant is right hand dominant.  Negative Tinel's sign and Phalen's sign on
> the right.
>         . . .
> Functional Assessment/Medical Source Statement: This claimant has clinical
> findings indicative of carpal tunnel of the left *with some slight wasting of the thenar
> pads and positive Tinel's sign.*   With these findings, therefore the following is
> recommended:
>         . . .
> Manipulative Activities: no limitations on reaching over head and reaching forward,
> but she can only perform occasional handling, fingering, and feeling on account of
> her carpal tunnel syndrome.

AR 571–72 (emphasis added).

The ALJ rejected the manipulative limitations explaining as follows:

> I accord little weight to the manipulative limitations expressed in Dr. Rios' medical
> source statement because Dr. Siekerkotte found no manipulative limitations and this
> is consistent with the hospital records documenting a good functional ability
> throughout the extremities based on electrodiagnostic testing on July 11, 2018 (see,
> Exhibit 18F). Furthermore, Dr. Rios found intact sensation, full grip strength with
> fine and gross finger movements preserved, *and negative Tinel's and Phalen's sign
> despite slight wasting of the left thenar pads*. These findings are not consistent with
> the manipulative limitations assessed. The established residual functional capacity
> accommodates the occasional symptoms the claimant has reported with respect to
> her hand and arm complaints.

AR 36 (emphasis added).

Plaintiff argues as follows:

> The ALJ asserted that Dr. Rios's opinion is not consistent with findings of negative
> Tinel's and Phalen's sign. Ar. 36.  However, the ALJ failed to note that Dr. Rios
> only documented negative signs on the right (AR 571), and there was positive
> Tinel's and wasting of the thenar pads on the left. AR 572.

Br. at 7 (Doc. 20).

In response, Defendant states as follows:

More specifically, Plaintiff argues that the ALJ failed to note that, during Dr. Rios's examination of Plaintiff, Tinel's and Phalen's signs were purportedly positive on the left (Id. at 7, citing AR 571-72). Plaintiff also argues that the presence of slight thenar pad wasting on the left further supports Dr. Rios's opinion (Id.). However, the actual examination report of Dr. Rios does not document positive Tinel's or Phalen's sign in either upper extremity (AR 570-72). It is not until Dr. Rios's "Functional Assessment/Medical Source Statement" that a positive finding is reported: Dr. Rios stated that Tinel's sign was positive on the left (AR 571). Thus, the medical sign, though incorporated into his opinion, was not documented in his examination report and even that subsequent opinion did not reference the positive Phalen's sign upon which Plaintiff now partially bases her argument.

Resp. at 6 (Doc. 21).

The first sentence inaccurately characterizes Plaintiff's argument, which did not contend the Phalen's sign was positive on the left, only that Tinel's was positive on the left, which it was. The remaining discussion concerning the location of the pertinent findings within Dr. Rios examination and opinion is not persuasive.

Dr. Rios documented the negative right handed provocation signs (Phalen's and Tinel's) under "General Findings," but documented the positive left hand provocation sign (Tinel's) under "Functional Assessment/Medical Source Statement." Dr. Rios documented the slight thenar pad wasting of the left hand in both sections. Here, the ALJ's discussion of Dr. Rios examination and opinion was not entirely accurate. The ALJ suggested Tinel's was negative bilaterally, but it was positive on the left as Plaintiff emphasizes. Further, as Plaintiff observes, the ALJ's citation to Dr. Siekerkotte's opinion (which identified no manipulative limitations) does not bolster the ALJ's decision. As the ALJ himself noted elsewhere in the decision, Dr. Siekerkotte's opinion predated the relevant period.

Nevertheless, the ALJ identified additional reasons for discounting Dr. Rios opinion which were both specific and legitimate. First, the ALJ noted Dr. Rios' other examination findings

included full grip strength with fine and gross motor movements preserved.  Plaintiff contends in reply that the ALJ failed to explain how this undermines Dr. Rios' opinion concerning a limitation to occasional handling and fingering.  Reply at 2, Doc. 22.  At issue is the frequency with which Plaintiff could perform fine and gross manipulations with her hands in the work context.  She demonstrated adequate functioning in those respects at the consultative examination.

The ALJ further cited the negative EMG study (Ex. 18F, AR 669).  Plaintiff notes that a negative EMG does not rule out carpal tunnel, particularly given other signs of carpal tunnel such as positive Tinel's and thenar atrophy.  But this argument somewhat misstates the issue as there is no dispute that Plaintiff had carpal tunnel syndrome, and the ALJ did not suggest otherwise.  The ALJ found Plaintiff had the severe impairment of carpal tunnel syndrome and that she was therefore limited to frequent handling and fingering (up to 2/3 of an 8-hour day, SSR 83-10).  The ALJ did not fully embrace Dr. Rios opinion that Plaintiff was limited to occasional handling and fingering (1/3 of an 8-hour day), a conclusion which is well-supported.

This is not a case where an ALJ is required to defer to the physician's opinion on a complex or highly technical issue.  The findings at issue are concise, uncomplicated, and amply supportive of the ALJ's conclusion.  Plaintiff had a positive provocation sign (Tinel's) and "slight" thenar atrophy in her non-dominant left hand, no positive clinical findings shown in her right hand, full grip strength and dexterity in both hands, and an unremarkable EMG/NCV.  The ALJ reasonably limited Plaintiff to frequent, not occasional, manipulative activities.

**B.      Plaintiff's Testimony**

**1.      Applicable Law**

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883.  *See also*

8

20 C.F.R. § 404.1545(a)(3).

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms;

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

## 2.   Analysis

The ALJ's analysis proceeded by: 1) summarizing the claimant's testimony and subjective reports; 2) finding the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms (and finding no malingering); and, 3) finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 26.

Plaintiff argues that what follows was a non-specific summary of the objective evidence and other evidence of record, and a conclusory rejection of all of Plaintiff's subjective complaints. However, Plaintiff likewise does not reference specific applicable evidence supportive of Plaintiff's complaints. Br. at 10 (citing *Godinez v. Berryhill*, No. SACV 17-0194 SS, 2017 WL 6349720, at *4 (C.D. Cal. Dec. 11, 2017).

Some Ninth Circuit case law does suggest the ALJ must do more and engage in a sort of matching exercise explaining which pieces of evidence undermined which pieces of testimony. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (noting ALJ must explain "which daily activities conflicted with which part of Claimant's testimony.").

Other Ninth Circuit case law suggests otherwise.  *See, e.g.*, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ

satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

On this issue, Plaintiff's discussion is more academic than practical and is susceptible of the same criticism directed at the ALJ, namely that Plaintiff offers no guidance as to what testimony should have been credited as true, what evidence would support it, and what RFC restrictions would logically follow in addition to, or in lieu of, the restrictions the ALJ already included in the RFC. As the party challenging the agency's determination, Plaintiff had the primary obligation of providing a fact-specific discussion. *See Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)* ("The claimant carries the initial burden of proving a disability."); *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted); *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

At the outset of her brief Plaintiff framed her second claim of error around "limitations related to colitis, including her persistent abdominal pain" (Br. at 1), but neither her "Summary of Relevant Testimony," nor her argument section revisited the topics of colitis or abdominal pain.

Plaintiff offered the following summary of relevant testimony, testimony she presumably contends ought to have been credited as true and incorporated into the RFC:

> At the hearing, Plaintiff testified to the following: She is diagnosed with depression, a learning disability, a history of renal stones, academic delay, post-traumatic stress disorder, and TMJ with jaw pain and locking that is worse at night. Ar. 51-52. She did not complete the 10th grade, and she did not get her GED or vocational training. Ar. 52. She was turned 18 years old while in the tenth grade and she decided to leave school. Ar. 54. She had an IEP for help with all classes,

including reading, math, and science. Ar. 54-55. She can read easy books at about a fifth-grade level. Ar. 52-53. She does not have a driver's license but she has a bus pass. Ar. 67. She has trouble with bus routes at times and has to ask the bus drivers for help. Ar. 70. Some drivers are rude and will not help, so she asks other people on the bus to figure out how to get where she needs to go. Ar. 70. She sometimes cannot understand enough to read labels and she has to ask one of her sisters. Ar. 69.

She had a son in 2011, but she had hard times with miscarriages after that, which led to post-traumatic stress disorder. Ar. 56. She previously saw a counselor and takes Prozac, and she is looking for a new counselor. Ar. 56. She and her son live with her mom and stepfather, and her parents make meals and pay bills. Ar. 57-58. She does some cleaning and goes to the store with her mother. Ar. 58. If the store is crowded, she will stay in the car because she is too anxious and cannot handle the crowd. Ar. 58-61. If she has a bad day where her anxiety and depression feel severe, her mom will take over childcare for her. Ar. 62.

She has carpal tunnel with symptoms of numbness and tingling in the hands. Ar. 64. She will drop things once or twice daily and her hands cramp with she writes. Ar. 65. She wears wrist braces at night. Ar. 65. She does not have a consistent doctor to give her continuous care, but she sees any doctor who will treat her. Ar. 73-74. She does not know if she needs surgery, but she would be afraid if she did. Ar. 74.

Despite the ALJ's inclusion of language rejecting Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms, none of the above testimony, if accepted, is inconsistent with the RFC which appears to reasonably accommodate Plaintiff's alleged limitations.

Plaintiff highlights her testimony as to her diagnosed learning disability, academic delay, and highest education level. These are objective facts beyond dispute regardless of the issue of Plaintiff's credibility.

The ALJ acknowledged the diagnoses and education level and posed the same to the Vocational Expert at the hearing among Plaintiff's other vocational considerations and work history. AR 25; 76-77. Plaintiff does not contend otherwise.

Plaintiff also highlights her testimony as to her 5th grade reading level, difficulty using public transportation without guidance from bus drivers or passengers, and difficulty understanding some food labels without guidance from her sisters. Relatedly, the RFC provides that she cannot "understand, remember, and/or apply information necessary to perform complex and detailed work

tasks or make judgments on complex and detailed work-related job assignments." AR 25. Plaintiff does not contend that a more restrictive RFC was warranted in consideration of her intellectual limitations.

In addition, Plaintiff points to her testimony concerning her post-traumatic stress disorder, anxiety and fear of crowded places. In the same vein, the RFC provides that "she cannot cope with the stress normally associated with semi-skilled or skilled employment," and can have no more than occasional face-to-face interaction with the general public, supervisors, and peers. *Id.*

Again, Plaintiff offers little as to what a more appropriate RFC would look like. Even if the Court was inclined to remand for further proceedings, it is not clear what guidance the Court would provide the ALJ on remand other than to generally reconsider Plaintiff's testimony. To the extent Plaintiff believes she testified to the existence of specific limitations not adequately accounted for in the RFC, it was her obligation to explain this. She did not. *See Juniel v. Saul*, No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff "could not have public contact" and limited interaction with co-workers.").

Finally, Plaintiff highlights her testimony as to numbness and tingling in her hands, dropping things once or twice daily, and use of night splints. The ALJ did not refute the existence of carpal tunnel syndrome and associated limitations and restricted Plaintiff to no more than frequent (2/3 of an 8-hour day) manipulative activities. Importantly, the RFC is not a representation of the most one can do while remaining pain free, it is a representation of "the most you can do despite your limitations." 20 C.F.R. 416.945(a)(1). The testimony, even if credited as true, does not establish or strongly support more restrictive manipulative limitations. Therefore, Plaintiff establishes no error as to the ALJ's treatment of her subjective complaints as reflected in her oral

testimony or function reports.

## VI.    Conclusion

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. The undersigned further recommends that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied, and that the Clerk of Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Monica Abitia.

## VII.   Objections Due within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __July 30, 2023__          _____ /s/ Gary S. Austin_
                                         UNITED STATES MAGISTRATE JUDGE