UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA ABITIA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:21-cv-00334-DAD-GSA<br><br>ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S APPEAL, AND REMANDING THIS CASE TO DEFENDANT COMMISSIONER<br><br>(Doc. Nos. 20, 24) |

Plaintiff Monica Abitia, proceeding with counsel, brought this action seeking judicial review of the Commissioner of Social Security's final decision denying plaintiff's application for benefits under the Social Security Act. (Doc. No. 1.) The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On July 31, 2023, the assigned magistrate judge issued findings and recommendations recommending that plaintiff's appeal of the defendant Commissioner's decision (Doc. No. 20) be denied, defendant's decision denying plaintiff's application for benefits be affirmed, and the Clerk of the Court be directed to enter judgment in favor of defendant. (Doc. No. 24 at 14.) The findings and recommendations found that the administrative law judge ("ALJ") had committed multiple errors in determining that plaintiff was limited to frequent, rather than occasional,

1

handling, fingering, and manipulating. (*Id.* at 6–7.) The findings and recommendations nonetheless recommended that the ALJ's determination in this regard be affirmed as supported by specific and legitimate reasons. (*Id.* at 7–8.) Finally, the findings and recommendations found that the ALJ sufficiently considered plaintiff's subjective testimony regarding her pain and limitations under the stricter standard requiring such an evaluation to be supported by specific, clear and convincing reasons. (*Id.* at 10–14.)

The pending findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.* at 14.) Plaintiff filed her objections on August 14, 2023. (Doc. No. 25.) Defendant filed his opposition to plaintiff's objections on August 18, 2023. (Doc. No. 26.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including plaintiff's objections and defendant's opposition thereto, the court will adopt in part and decline to adopt in part the pending findings and recommendations.

**A.     Whether the ALJ Properly Discounted the Opinion of Dr. Rios**

For applications like plaintiff's that were filed before March 27, 2017, the ALJ may reject a contradicted opinion of a treating or examining physician only for "specific and legitimate" reasons supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). The undersigned agrees with the magistrate judge's conclusion that, despite multiple errors, the ALJ's finding that plaintiff was limited to frequent manipulative activities is supported by specific and legitimate reasons.

The magistrate judge noted two major errors committed by the ALJ in determining that plaintiff was limited to frequent manipulative activities. First, the ALJ incorrectly stated that one of plaintiff's examining physicians, Dr. Rios, found "negative Tinel's and Phalen's sign despite slight wasting of the left thenar pads."[1] (Doc. No. 13-1 at 40.) In fact, as the magistrate judge pointed out in the pending findings and recommendations, Dr. Rios recorded a positive Tinel's

---

[1] Tinel's test and Phalen's test are examinations used to diagnose carpal tunnel syndrome.

2

1    sign for plaintiff's left hand.  (*See* Doc. No. 24 at 7; *see also* Doc. No. 13-1 at 576.)  The ALJ
2    then compounded this error by giving "little weight" to Dr. Rios's finding that plaintiff was
3    limited to occasional manipulative activities in part because such a finding was inconsistent with
4    a "negative Tinel's and Phalen's sign."  (Doc. No. 13-1 at 40.)

5         Second, despite initially stating that "evidence from treating sources predating the
6    claimant's application for benefits" was "not relevant to the time period under adjudication" (*id.*
7    at 31), the ALJ nevertheless gave "significant weight" to the assessment of Dr. Siekerkotte
8    produced on January 28, 2015—nearly eight months prior to the relevant time period (*id.* at 36–
9    37).  Moreover, the ALJ gave little weight to Dr. Rios's finding of occasional manipulative
10   activities—a finding from an examination conducted within the relevant time period on
11   January 12, 2016—in part "because Dr. Siekerkotte found no manipulative limitations."  (*Id.* at
12   40.)  In sum, the ALJ gave significant weight to an opinion pre-dating the relevant time period by
13   nearly eight months, then used that opinion along with misconstrued medical evidence to discount
14   an opinion rendered within the relevant time period.

15        However, the court agrees with the magistrate judge that the ALJ did provide other
16   specific and legitimate reasons to support a finding that plaintiff was limited to frequent
17   manipulative activities.  In this regard, the ALJ correctly noted that "Dr. Rios found intact
18   sensation, [and] full grip strength with fine and gross finger movements preserved," and that "the
19   hospital records document[ed] a good functional ability throughout the extremities based on
20   electrodiagnostic testing on July 11, 2018."  (*Id.*) (citation omitted).  Plaintiff argues in her
21   opening brief in support of remand that a negative electromyography ("EMG") test alone is not
22   sufficient to "rule out carpal tunnel syndrome or corresponding limitations."  (Doc. No. 20 at 8.)
23   However, as the magistrate judge pointed out in the pending findings and recommendations, the
24   ALJ did not rule out carpal tunnel syndrome, but rather found that plaintiff's carpal tunnel
25   syndrome limited her merely to frequent manipulative activities.  (Doc. No. 24 at 8; *see also* Doc.
26   No. 13-1 at 26 ("The claimant has the following medically severe combination of impairments:
27   . . . bilateral carpal tunnel syndrome . . . .")).  The court therefore adopts the magistrate judge's
28   finding that the ALJ provided specific and legitimate reasons in support of his conclusion that

3

1  plaintiff was limited to frequent, rather than occasional, manipulative activities.

2  **B.      Whether the ALJ Properly Discounted Plaintiff's Subjective Testimony**

3  However, there remains the question of whether the ALJ provided specific, clear and convincing reasons in discounting plaintiff's subjective testimony.

An ALJ must employ a two-step test to "determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .  If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet:  The clear and convincing standard is the most demanding required in Social Security cases.

*Id.* at 1014–15 (internal citations and quotation marks omitted).  Here, the ALJ found that plaintiff had presented objective medical evidence of underlying impairments that "could reasonably be expected to cause the alleged symptoms" but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. No. 13-1 at 30.)  Of particular note is that the ALJ found that the objective medical evidence "confirms the presence of . . . bilateral carpal tunnel syndrome . . . ." (*Id.*)

In her opening brief in support of remand, plaintiff provided a "summary of relevant testimony" from the hearing before the ALJ detailing her own view of her symptoms and limitations. (*See* Doc. No. 20 at 5–6.)  Plaintiff then argued that the ALJ failed to provide specific, clear and convincing reasons for discounting her subjective testimony regarding her symptoms. (*Id.* at 8–11.)  The pending findings and recommendations rejected that argument, finding that the ALJ had provided specific, clear and convincing reasons as to why the ALJ was discounting plaintiff's testimony regarding her "5th grade reading level, difficulty using public transportation without guidance from bus drivers or passengers . . . difficulty understanding some

/////

1  food labels without guidance from her sisters . . . her post-traumatic stress disorder, anxiety and
2  fear of crowded places." (Doc. No. 24 at 12–13.)[2]
3  The findings and recommendations also found that the ALJ properly considered plaintiff's
4  testimony "as to numbness and tingling in her hands, dropping things once or twice daily, and use
5  of night splints" by restricting plaintiff to frequent, rather than occasional, manipulative activities.
6  (*Id.* at 13.) In his opinion, the ALJ "conclude[d] the claimant's subjective allegations of
7  debilitating pain, limitation, and mental issues precluding all work activity are not supported by
8  the objective evidence." (Doc. No. 13-1 at 41.) The ALJ found plaintiff's "testimony at the
9  hearing was not persuasive or consistent with the objective evidence such as the benign physical
10 examination findings throughout the record," that plaintiff's testimony was undermined by her
11 activities of daily living, and that some of plaintiff's symptoms "have been responsive to
12 treatment." (*Id.*) As noted above, the ALJ gave little weight to Dr. Rios's findings because Dr.
13 Siekerkotte found no manipulative limitations, because of the negative neurodiagnostic testing,
14 and because occasional manipulative activities were inconsistent with the (mischaracterized)
15 findings of Dr. Rios. (*Id.* at 40.) The ALJ also gave "much weight" to the opinions of two non-
16 examining physicians, Dr. Frye and Dr. Bobba.[3] (*Id.* at 40–42.) Dr. Frye and Dr. Bobba both
17 found that plaintiff was limited to frequent manipulative activity. (Doc. No. 13-1 at 106, 122.)
18 Specifically, in the section of Dr. Frye's and Dr. Bobba's reports instructing them to explain
19 plaintiff's manipulative limitations and to "[c]ite specific facts upon which your conclusions are
20 based," Dr. Frye and Dr. Bobba each wrote in full: "Freq grasp and fingering and feeling LUE
21 [left upper extremities], splints prn [splints as needed]." (Doc. No. 13-1 at 106, 122.)

---

[2] Because the court concludes that the action will be remanded for further proceedings on an open record in light of the ALJ's failure to provide specific, clear and convincing reasons to discount plaintiff's testimony regarding the numbness, cramps, and pain in her hands, the court need not—and therefore does not—consider whether the ALJ provided specific, clear and convincing reasons to discount the remainder of plaintiff's subjective testimony.

[3] The court notes that despite the ALJ giving "much weight" to Dr. Frye's opinion, the ALJ did not appear to note that Dr. Frye highlighted Dr. Rios's finding of a positive Thalen's sign. (*See* Doc. No. 13-1 at 103) ("L[eft] CTS [carpal tunnel syndrome] w/ thenar wasting w/ some preservation of grip strength and apparently + findings.").

5

1     1.     <u>Medical Evidence of Record and Benign Physical Findings</u>

The court concludes that the ALJ failed to provide specific, clear and convincing reasons to explain why he discounted plaintiff's subjective testimony regarding the numbness and pain in her hands and her tendency to drop things during the day. The Ninth Circuit has considered circumstances similar to these and stated:

> The ALJ discredited Trevizo's testimony regarding her 'weak grip and numbness in her fingers' because she found that Dr. House wrote that Trevizo 'displayed a normal grip.' It is uncontradicted that Trevizo received carpal tunnel surgery on both hands. Her primary care physician noted substantial physical limitations in her gripping ability as a result. The ALJ offered no basis, much less a 'clear and convincing one,' for crediting the opinion of an examining psychologist with respect to Trevizo's grip over that of Trevizo's primary treating physician and Trevizo's own testimony. Moreover, Dr. House merely observed that Trevizo 'displayed a normal pencil grip.' This signals only that Trevizo held a pencil in a normal manner and not that there were no limitations to her gripping strength or fine or gross manipulation abilities, which Dr. House would have been in no position to assess.

*Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017). Here, the ALJ discredited plaintiff's testimony regarding her numbness, hand cramps, and hand pain partly on the basis of the opinion of Dr. Siekerkotte and the reports of Dr. Frye and Dr. Bobba. But Dr. Rios, the only physician to examine plaintiff within the relevant time period, found positive signs of carpal tunnel syndrome and recommended only occasional manipulative activities as a result. The ALJ offered no clear and convincing basis for crediting the opinion of an examining doctor outside the relevant time period with respect to plaintiff's manipulative capabilities over that of an examining doctor within the relevant time period. Nor did the ALJ provide clear and convincing reasons for crediting the reports of non-examining physicians Frye and Bobba over the opinion of examining physician Rios.[4] *Cf. Garrison*, 759 F.3d at 1012 (noting that under the regulations that existed when plaintiff Abitia filed her application for benefits, "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician"). This is especially true in light

---

[4] The court also notes that Dr. Frye and Dr. Bobba each stated in their reports that they gave "Great Weight" to the opinion of Dr. Rios because Dr. Rios provided a "comprehensive exam that is internally consistent and congruent with longitudinal evidence on file from other venues." (Doc. No. 13-1 at 105, 121.)

6

of the ALJ misconstruing Dr. Rios's objective findings as benign, *i.e.*, overlooking Dr. Rios's finding of a positive Thalen's sign.

The ALJ also noted the negative neurodiagnostic results in his attempt to explain why plaintiff's pain was not as severe as she claimed. However, recent decisions from the Ninth Circuit cast doubt on such an approach:

> [A]n exam showing 'no neurological defects' and a 'normal mood,' at best, provides a reason to discount Ferguson's testimony about his neurological deficits and mood. The ALJ did not explain, and we do not see, how the absence of neurological defects and a normal mood during a medical exam are inconsistent with Ferguson's testimony about the severity and frequency of his headaches. For example, the ALJ did not identify any evidence indicating that Ferguson cannot experience severe and frequent headaches in the absence of neurological defects.

*Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024); *see also Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023) ("[T]he ALJ discussed instances where results of exams or imaging did not fully substantiate Glanden's pain reports. But, as we have recognized, subjective pain is not always verifiable through a physical examination.").[5] Here, plaintiff's negative neurodiagnostic exam results would provide, at best, a reason to discount hypothetical testimony regarding neurological defects in plaintiff's hands. The ALJ did not explain, and it is not clear, how the absence of neurological defects during a medical exam is inconsistent with plaintiff's testimony about the severity and frequency of numbness, cramping, and pain in her hands. For example, the ALJ did not identify any evidence indicating that plaintiff cannot experience severe and frequent hand numbness, cramping, and pain given the results of the neurodiagnostic testing. This lack of explanation from the ALJ is particularly noteworthy given that Dr. Singh stated in the conclusion of the neurodiagnostic testing that "[f]urther clinical correlation is recommended." (Doc. No. 13-1 at 673.) In sum, the medical evidence does not provide clear and convincing reasons to discount plaintiff's subjective testimony regarding her hand symptoms. *See Glanden*, 86 F.4th at 847 ("[T]he ALJ determined that aspects of the existing record evidence conflicted

/////

---

[5] The court recognizes that the pending findings and recommendations were not issued with the benefit of the Ninth Circuit's recent decisions in *Glanden* and *Ferguson*.

with Glanden's alleged symptoms. None of these potential inconsistencies rises to the level of clear and convincing reasons to reject his testimony.").

### 2. Activities of Daily Living

The ALJ also discounted plaintiff's subjective testimony because "[h]er activities of daily living include household chores, childcare, shopping, personal care, socializing, and entertainment. These activities are not consistent with one who suffers such severe limitations as to preclude all work activity." (Doc. No. 13-1 at 41.)

The Ninth Circuit's recent decision in *Ferguson* demonstrates that this conclusory analysis comes short of providing clear and convincing reasons for discounting plaintiff's testimony:

> The ALJ noted that Ferguson's daily activities include 'watching television and playing video games,' 'help[ing] care for his mother's wild cats,' prepar[ing] simple meals,' 'going out to his shop to work on projects' (such as a model house), and 'walk[ing] every now and then.' . . . But, the ALJ did not explain how, in his view, Ferguson's testimony about those daily activities is inconsistent with his testimony about the severity and frequency of his headaches. And we see no reasonable inference that such an inconsistency exists. Ferguson testified that he experiences headaches two or three times a week, and that sometimes, the headache lasts 'a day or two.' Further, Ferguson testified that when he experiences headaches, he does not 'get out of [his] room,' and he does 'nothing.' Ferguson can both do nothing when he has severe headaches and engage in his daily activities when he does not. Ferguson need not 'vegetate in a dark room' to qualify for disability.

*Ferguson*, 95 F.4th at 1203 (alterations in original) (internal citations omitted).[6] The ALJ offered no explanation as to why household chores, childcare, shopping, personal care, socializing, and entertainment would be inconsistent with plaintiff's alleged limitations, even if the ALJ were correctly characterizing plaintiff's testimony.[7] Nor does the court see any reasonable inference that such an inconsistency exists. Plaintiff testified that she drops things when her "hands go numb . . . [o]nce or twice a day" and that her hands cramp when she uses a pencil. (Doc. No. 13-

---

[6] Again, the court recognizes that the findings and recommendations were not issued with the benefit of the Ninth Circuit's decision in *Ferguson*.

[7] Because the court concludes that plaintiff's activities of daily living as characterized by the ALJ do not provide a clear and convincing basis for discounting her subjective hand testimony, the court need not—and therefore does not—consider whether that characterization is accurate.

1 at 69.) Plaintiff can both engage in her daily activities when her hands are functioning and not do so when her hands are not. Plaintiff need not "vegetate in a dark room to qualify for disability." *Ferguson*, 95 F.4th at 1203. This is particularly true in light of the vocational expert's testimony suggesting that plaintiff would be disabled if she were limited to occasional manipulative activities (*see* Doc. No. 13-1 at 83–84), as she was found to be by the only doctor to examine her and issue an opinion during the relevant time period. Accordingly, plaintiff's activities of daily living do not provide a specific, clear and convincing basis for discounting her hand pain and hand cramp testimony. *See Ferguson*, 95 F.4th at 1203 ("Because there is no inconsistency between Ferguson's headache testimony and his daily activities, the ALJ's reference to that purported inconsistency is not a specific, clear, and convincing reason to discount Ferguson's headache testimony.").[8]

       3.    <u>Conservative Treatment</u>

The final reason provided by the ALJ in support of discounting plaintiff's testimony was that "some of her alleged complaints and medical concerns have been responsive to treatment and do not impose a disabling degree of limitation." (Doc. No. 13-1 at 41.) The ALJ "conclude[d] the claimant has had some chronic jaw pain and recurrent hand/wrist pain. However, treatment has been very conservative and the diagnostic evidence fails to show medical conditions warranting greater levels of care." (*Id.* at 34.)

The court notes that while the ALJ stated that he "considered pain as a factor" in assessing plaintiff's manipulative limitations (Doc. No. 13-1 at 40), the ALJ did not appear to consider plaintiff's testimony regarding the numbness in her hands and propensity to drop things throughout the day. *Cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (finding that

---

[8] The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *see also id.* (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The failure to recognize these differences [between activities of daily living and activities in a full-time job] is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")).

the ALJ failed to provide specific, clear and convincing reasons where "the ALJ stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged'"). Plaintiff's testimony that her hands go numb and that she drops things once or twice per day despite her already allegedly limited activities of daily living, if credited as true, would clearly be relevant to the determination of how often she can manipulate objects in the course of full-time employment.

Moreover, the ALJ's vague invocation of "conservative treatment" here does not provide a specific, clear and convincing reason to support discounting plaintiff's testimony regarding her numbness, pain, cramping, and tendency to drop things. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist," such as where "the record does not reflect that more aggressive treatment options are appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010).[9] Here, the ALJ pointed to no evidence in the record, nor does the court see any, suggesting that more aggressive treatment options were appropriate or available for plaintiff. Nor did the ALJ specify which more aggressive treatments plaintiff should have pursued. *See Block v. Berryhill*, No. 2:16-cv-02230-EFB, 2018 WL 1567814, at *5 (E.D. Cal. Mar. 31, 2018) ("Moreover, 'the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available.'") (citation omitted); *Kimberli M. S. v. Kijakazi*, No. 21-cv-01836-AJB-MDD, 2023 WL 2346330, at *12 (S.D. Cal. Mar. 3, 2023) ("The problem with the conservative-treatment rationale, however, is that the ALJ never suggested what more aggressive treatment options might be pursued."), *report and recommendation adopted by* 2023 WL 8696370 (S.D. Cal. Apr. 11, 2023); *Wheeler v. Kijakazi*, No. 1:21-cv-01225-JLT-BAM, 2023 WL 4146215, at *4 (E.D. Cal.

---

[9] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

June 23, 2023) ("Finally, the ALJ did not identify what more aggressive treatment [ ] she believed to be appropriate for Plaintiff's conditions. Consequently, even if conservative, the treatment Plaintiff received for her pain does not support the ALJ's adverse evaluation of Plaintiff's subjective statements.")

The lack of explanation from the ALJ regarding more aggressive potential treatments is particularly important in light of plaintiff's otherwise limited residual functional capacity ("RFC"). Due to plaintiff's several severe impairments, the ALJ concluded that plaintiff: (a) was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently and was therefore limited mostly to light work; (b) could have "no more than occasional face-to-face interaction with the general public, supervisors, and coworkers"; (c) could not "understand, remember, and/or apply information necessary to perform complex and detailed work tasks or make judgments on complex and detailed work-related job assignments"; and (d) could not "cope with the stress normally associated with semi-skilled or skilled employment" due to her mental limitations. (Doc. No. 13-1 at 29.) When the vocational expert suggested that plaintiff being limited to occasional manipulative activities would render her disabled (*id.* at 83–84), it was only because there were so few jobs a claimant with the RFC detailed above could perform to begin with. Plaintiff does not argue here that her manipulative limitations, taken apart from all her other limitations, are sufficient to rule out all work. For instance, plaintiff did not "claim that she experienced pain approaching the highest level imaginable" in a manner that "was inconsistent with the 'minimal, conservative treatment' that she received." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Rather, plaintiff has alleged moderate recurring hand pain and numbness that doctors might reasonably find does not warrant more aggressive treatment on its own, but which renders plaintiff disabled in combination with her many other limitations and impairments. *See Perez v. Colvin*, No. 14-cv-02626-JPR, 2016 WL 1274114, at *5 (C.D. Cal. Mar. 31, 2016) ("[T]he ALJ failed to identify any other treatment that was currently recommended or available for Plaintiff's impairments or point to anything in the record to show that any more aggressive treatment than the treatment Plaintiff was already receiving was a standard method for treating the conditions causing the type of physical and mental limitations alleged by Plaintiff. The ALJ

11

1  cannot fault Plaintiff for failing to pursue nonconservative treatment options if none existed.")
2  (citing *Lapeirre-Gutt*, 382 F. App'x at 664); *cf. Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir.
3  2017) ("Any evaluation of the aggressiveness of a treatment regimen must take into account the
4  condition being treated.").[10]

5        The court therefore concludes that the ALJ failed to provide specific, clear and convincing
6  reasons for discounting plaintiff's testimony regarding her hand pain, numbness, cramping and
7  tendency to drop things.  Accordingly, the court will remand this action to the ALJ for further
8  proceedings on an open record.  (*See* Doc. Nos. 20 at 11 ("[I]t is respectfully requested that the
9  decision of the ALJ be vacated and the case be remanded for further proceedings including a de
10 novo hearing and new decision."); 21 at 19 ("Should this court find reversible error, the
11 Commissioner concurs with plaintiff's assertion that the appropriate remedy would be to remand
12 this case to the Agency for further proceedings.")); *see also Ferguson*, 95 F.4th at 1204 ("In sum,
13 substantial evidence does not support the ALJ's RFC assessment because the ALJ did not
14 articulate any specific, clear, and convincing reasons for discounting Ferguson's headache
15 symptom testimony. . . .  The Commissioner does not contend that the ALJ's error was harmless.
16 Consequently, we reverse the judgment of the district court with instructions to remand to the
17 ALJ to reconsider the credibility of Ferguson's headache symptom testimony in a manner
18 consistent with this opinion.").

---

[10] The court further notes that the ALJ's lack of explanation prevented plaintiff from explaining why she did not seek the additional unspecified treatment. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").  For instance, one such good reason is the inability to afford greater treatment, *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), and plaintiff testified that she receives "[f]ood stamps," "[w]elfare" in the form of "cash aid[]," and Medi-Cal (*see* Doc. No. 13-1 at 67–68). Evidence in the record also suggests plaintiff has an IQ of approximately 70, and the ALJ concluded that plaintiff had several mental limitations described above.  (*See, e.g.*, *id.* at 29, 35, 38); *cf. Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 n.1 (9th Cir. 1999) ("Particularly in light of Regennitter's mental illnesses and low IQ . . . these ambiguous statements do not support the inference that Regennitter could have received medical treatment from [the Oregon Health Plan] but he chose not to pursue it because his complaints are not as severe as he asserts.").

**CONCLUSION**

Accordingly, for the reasons explained above:

1. The court adopts in part the findings and recommendations issued on July 31, 2023 (Doc. No. 24) finding that the administrative law judge provided specific and legitimate reasons to support discounting the opinion of Dr. Rios;

2. The court declines to adopt the findings and recommendations (Doc. No. 24) finding that the ALJ provided specific, clear and convincing reasons for discounting plaintiff's testimony regarding her hand pain, numbness, cramping and tendency to drop things and concludes the opposite;

3. The court also therefore declines to adopt the recommendation that plaintiff's appeal be denied;

4. Plaintiff's appeal from the decision of the defendant Commissioner (Doc. No. 20) is granted;

5. This case is remanded to the Commissioner for further proceedings consistent with this order; and

6. The Clerk of the Court is directed to enter judgment in favor of plaintiff and close this case.

IT IS SO ORDERED.

Dated:   **April 30, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE